UNITED STATES DISTRICT COURT
MIDDLE DISTRICT OF FLORIDA
FORT MYERS DIVISION

LAZARO MOLINA VILLAR,

       Petitioner,

    v.

MIAMI FIELD OFFICE
DIRECTOR, IMMIGRATION AND
CUSTOMS ENFORCEMENT AND
REMOVAL OPERATIONS, et al.,

       Respondents.

Case No. 2:26-cv-381-KCD-NPM

_____/

## ORDER

Petitioner Lazaro Molina Villar has filed a habeas corpus petition challenging his detention by U.S. Immigration & Customs Enforcement ("ICE"). (Doc. 1.)[1] He claims that his continued imprisonment violates the Fifth Amendment as interpreted by *Zadvydas v. Davis*, 533 U.S. 678 (2001). Respondents oppose the petition. (Doc. 6.) For the reasons below, the petition is **DENIED**.

## I. Background

Villar is a native of Cuba who entered the United States in 2018 and was immediately apprehended. (Doc. 1 ¶¶ 29, 30.) After spending several months in custody, he was ordered removed but also granted relief from that

---

[1] Unless otherwise indicated, all internal quotation marks, citations, case history, and alterations have been omitted in this and later citations.

action under the Convention Against Torture. (*Id.* ¶ 1.) Villar was placed on an order of supervision and release. (*Id.* ¶ 35.)

On December 6, 2025, he attended a routine ICE check-in appointment and was detained. (*Id.* ¶¶ 37, 38.) Two months later, he filed this emergency petition for a writ of habeas corpus. (Doc. 1.) He argues his removal is not reasonably foreseeable and asks this Court to order his immediate release. (*Id.* at 8.)

## II. Legal Framework

The federal habeas statute, 28 U.S.C. § 2241, provides authority to issue writs of habeas corpus when an individual is "[i]n custody in violation of the Constitution or law or treaties of the United States." *Id.* § 2241(c)(3). "At its historical core, the writ of habeas corpus has served as a means of reviewing the legality of Executive detention, and it is in that context that its protections have been strongest." *I.N.S. v. St. Cyr*, 533 U.S. 289, 301 (2001). "Section 2241 authorizes federal courts to hear challenges to immigration detention." *Grigorian v. Bondi*, No. 25-CV-22914-RAR, 2025 WL 2604573, at *2 (S.D. Fla. Sept. 9, 2025).

## III. Discussion

The analysis begins with a jurisdictional challenge. Respondents argue that 8 U.S.C. § 1252(g) strips this Court of jurisdiction to even hear Villar's plea because it arises from the "execution" of a removal order. (Doc. 6 at 3.)

We need not spend long here. The Supreme Court has repeatedly cautioned that § 1252(g) is narrowly tailored to three discrete actions, and it does not operate as a blanket ban on habeas review for prolonged detention. *See Jennings v. Rodriguez*, 138 S. Ct. 830, 841 (2018). Indeed, if the Government's sweeping interpretation were correct, *Zadvydas*—the seminal case where the Supreme Court held it could consider a habeas challenge to unlawful, prolonged immigration detention—would have been stopped in its tracks before ever reaching the merits. The Court is satisfied it has jurisdiction to decide whether Villar's detention is lawful. *Zadvydas*, 533 U.S. at 688 (citing § 1252(g) yet concluding "that § 2241 habeas corpus proceedings remain available as a forum for statutory and constitutional challenges to post-removal-period detention").

Respondents also argue that 8 U.S.C. § 1252(b)(9) bars judicial review. Not so. The Eleventh Circuit has held that § 1252(b)(9) "only affects cases that involve[] review of an order of removal." *Canal A Media Holding, LLC v. United States Citizenship & Immigr. Servs.*, 964 F.3d 1250, 1257 (11th Cir. 2020). Villar is not challenging his removal proceedings—he is challenging the antecedent detention. So "the Government's reliance on § 1252(b)(9) is misplaced." *Fernandez-Garcia v. U.S. Att'y Gen.*, No. 1-20-CV-23599-UU, 2021 WL 8821923, at *5 (S.D. Fla. Apr. 15, 2021).

That leaves the merits. The statutory framework works like this: when a noncitizen's removal order becomes final, the government has 90 days to effectuate removal. 8 U.S.C. § 1231(a)(1)(A). During that period, detention is mandatory. *Id.* § 1231(a)(2)(A). If the 90 days pass and the noncitizen is still here, the statute gives the government a choice: release the individual on supervision or keep them detained. *Id.* § 1231(a)(6).

But as the Supreme Court explained in *Zadvydas*, the authority to detain does not stretch into infinity. To avoid serious constitutional problems, the Court read an implicit limitation into the statute: the government may detain a noncitizen only for a period "reasonably necessary" to secure his removal. 533 U.S. at 659. And to make that rule workable, the Court established a presumption. For the first six months, detention is presumptively reasonable. *Id.* at 701. After that period has passed and the alien "provides good reason to believe that there is no significant likelihood of removal in the reasonably foreseeable future," the burden then shifts to the government to provide evidence sufficient to rebut that showing. *Akinwale v. Ashcroft*, 287 F.3d 1050, 1052 (11th Cir. 2002). Thus, "in order to state a claim under *Zadvydas*, the alien not only must show post-removal order detention in excess of six months but also must provide evidence of a good reason to believe that there is no significant likelihood of removal in the reasonably foreseeable future." *Id.*

4

Applied here, Villar cannot satisfy the initial temporal requirement. ICE took him into custody on December 6, 2025. Because he has been detained for just over three months, he remains squarely within the window in which his detention is presumptively reasonable. *See Guerra-Castro v. Parra*, Case No. 25-cv-22487-GAYLES, 2025 WL 1984300, at *4 (S.D. Fla. July 17, 2025) (finding habeas petition "premature" because "Petitioner has not been detained for more than six months"); *see also Jiang v. Mukasey*, No. 2:08-cv-773-FtM-29DNF, 2009 WL 260378, at *2 (M.D. Fla. Feb. 3, 2009); *Noel v. Glades Cnty. Sheriff*, No. 2:11-cv698-FtM-29SPC, 2011 WL 6412425, at *2 (M.D. Fla. Dec. 21, 2011).

Recognizing this hurdle, Villar attempts a workaround. He seeks to sidestep the six-month requirement by pointing to an earlier period of detention, arguing that the Court should aggregate his past and present stints in ICE custody. (Doc. 1 ¶ 51.) By combining these distinct periods of confinement, Villar contends that his total time in civil immigration detention exceeds the six-month threshold, which he asserts is sufficient to rebut the presumption of reasonableness and trigger the *Zadvydas* review.

District courts are split on whether prior time in ICE custody should be aggregated to satisfy the six-month *Zadvydas* clock. Some have firmly rejected this cumulative approach. They reason that if "detentions [are counted] in the aggregate, any subsequent period of detention, even one day,

would raise constitutional concerns." *Barrios v. Ripa*, No. 1:25-CV-22644, 2025 WL 2280485, at *8 (S.D. Fla. Aug. 8, 2025). Because the executive branch is tasked with great deference in effectuating removals, these courts warn that constantly adjudicating the constitutionality of every brief re-detention would improperly obstruct that statutory discretion. *Meskini v. Att'y Gen. of U.S.*, No. 4:14-CV-42 (CDL), 2018 WL 1321576, at *3 (M.D. Ga. Mar. 14, 2018). Under this view, *Zadvydas* does not function as a "Get Out of Jail Free Card that may be redeemed at any time just because an alien was detained too long in the past." *Id.*; *see also Flores-Reyes v. Assistant Field Off. Dir.*, No. 26-CV-20226, 2026 WL 406708, at *2 (S.D. Fla. Feb. 13, 2026).

Conversely, other courts have treated the *Zadvydas* period as cumulative. *Chen v. Holder*, No. CV 6:14-2530, 2015 WL 13236635, at *2 (W.D. La. Nov. 20, 2015). This approach is driven by the constitutional imperative to prevent the government from indefinitely detaining noncitizens through a loophole of release and re-detention. *Krechmar v. Parra*, No. 2:25-CV-01095-SPC-DNF, 2025 WL 3620802, at *3 (M.D. Fla. Dec. 15, 2025). To consider only the current, isolated period of confinement—ignoring all prior custody—would allow the government to bypass *Zadvydas* through successive detentions. For these courts, aggregation is the only way to safeguard against the precise danger of indefinite detention that the Supreme Court sought to

prevent. *See Rodriguez Romero v. Ladwig*, No. CV 25-1106-JWD-EWD, 2026 WL 321437, at *12 (M.D. La. Feb. 6, 2026).

This Court declines to endorse a blanket rule that all prior periods of confinement automatically aggregate to satisfy the *Zadvydas* six-month clock. Such a categorical approach is practically unworkable and effectively penalizes the government for its past lawful actions. If every prior day spent in immigration custody simply rolled over into the present calculus, the government's statutory authority to briefly re-detain a noncitizen to finalize a removal would be severely restricted, if not eliminated entirely. The six-month period established in *Zadvydas* was designed to provide the government a functional window to negotiate with foreign nations, secure travel documents, and coordinate the complex logistics of deportation. A strict aggregation rule ignores the reality that diplomatic circumstances evolve. If a foreign government that previously refused repatriation suddenly agrees to issue travel documents, the United States needs a practical opportunity to effectuate that newly viable removal. Mandating an automatic rollover of all past detention would force the immediate release of a noncitizen even when their current custody is driven by an imminent, foreseeable deportation, ultimately frustrating the core purpose of the removal statute.

Instead, the better approach is to afford the government a new six-month presumptively reasonable period for each discrete detention, unless

there are facts suggesting the government is acting with an improper motive. If the record reveals a calculated pattern of catch-and-release designed merely to reset the *Zadvydas* clock or evade judicial review, aggregation may be entirely appropriate. But absent evidence of such bad faith or a deliberate strategy of looping confinement, courts should presume that a subsequent detention is a genuine, independent effort to effectuate removal. This standard strikes the appropriate balance. It alleviates constitutional concerns regarding indefinite, cyclical detention by providing a safeguard against abuse, while simultaneously protecting the government's legitimate, statutory interest in finalizing deportations when logistical or diplomatic circumstances finally permit.

This approach finds support in both *Zadvydas*'s reasoning and the historical foundations of the vehicle Villar employs (habeas corpus). In *Zadvydas*, the Supreme Court eschewed a rigid, mechanical formula, focusing instead on whether the length of detention remains "reasonably necessary to secure removal." 533 U.S. at 699. The Court explicitly instructed lower courts to measure reasonableness in light of the specific circumstances of the case and the actual likelihood of a future deportation. *Id.* ("It should measure reasonableness primarily in terms of the statute's basic purpose, namely, assuring the alien's presence at the moment of removal."). That directive

8

undermines the logic of a blind, automatic aggregation of prior custody days here. *See also Meskini*, 2018 WL 1321576, at *3.

A flexible standard also aligns with the fundamental principle that habeas corpus is "at its core, an equitable remedy." *Munaf v. Geren*, 553 U.S. 674, 693 (2008). Because habeas relief is governed by equitable principles, courts are empowered to look beyond a mere mathematical tally to examine the totality of the circumstances. *Id.*; *see also Duckworth v. Eagan*, 492 U.S. 195, 213 (1989) (O'Connor, J., concurring) ("[T]he Court has long recognized that habeas corpus [is] . . . governed by equitable principles[.]"). By inquiring into whether the government has engaged in a deliberate cycle of release and re-detention, the court exercises its equitable discretion to prevent gamesmanship, all while preserving the executive branch's necessary flexibility to enforce the immigration laws.

Applying this standard here, Villar's argument for aggregation falls short. While he points to his prior period of ICE custody, the record is devoid of evidence that immigration officials manipulated his release and re-arrest to bypass the six-month presumption or avoid judicial oversight. Without proof of such tactical maneuvering, this Court treats his present custody as an independent, good-faith endeavor to secure his deportation.

Because Villar cannot aggregate his prior confinement, his relevant detention period began on December 6, 2025. At just over three months, he

remains within the six-month presumptively reasonable window established in *Zadvydas*. His legal challenge to the length of his detention is therefore premature, and the habeas petition must be **DISMISSED**. However, this dismissal is without prejudice to Villar refiling a new petition should his current detention exceed the six-month mark, and he can demonstrate there is no significant likelihood of removal in the reasonably foreseeable future. The Clerk is **DIRECTED** to terminate any pending motions and close the case.

      **ORDERED** in Fort Myers, Florida on March 16, 2026.

Kyle C. Dudek
United States District Judge

10